UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              CASE NO. 3:19cr113-MCR

KADEEM INGRAM,

    Defendant.
_____/

**ORDER**

    Pending is Defendant Kadeem Ingram's Motion to Withdraw Guilty Plea and Proceed to Trial by Jury, ECF No. 283, and the Government's Response, ECF No. 284. Having fully reviewed the matter, the motion is denied.

**Background**

    On September 17, 2019, Defendant Kadeem Ingram was charged in a nine-count indictment along with his father, Kenneth Ingram, and others for their involvement in a drug trafficking conspiracy. Kadeem Ingram made his initial appearance on September 24, 20109, and retained counsel, Anthony Britt and LaDray Gilbert, to represent him. Trial was continued several times on defense motions, to allow time to prepare for trial and in light of the COVID-19 pandemic, with the latest trial date set for November 16, 2020. On September 30, 2020, defense counsel filed a motion to suppress the search of Ingram's vehicle and seizure of

evidence from the traffic stop that resulted in his arrest. The undersigned held an evidentiary hearing on the suppression motion on October 15, 2021, during which the Government called multiple witnesses and introduced evidence regarding the scope of the investigation, and the drugs seized during the stop. The Government also played selected recorded telephone conversations that justified the stop and search and implicated Ingram in the conspiracy.

From this record, it was clear that Ingram and his father, Kenneth, were part of an extensive drug trafficking conspiracy involving cocaine and cocaine base, which operated in and around Walton County, Florida.[1] The investigation included the use of confidential informants, controlled purchases, physical and video surveillance, and telephone toll records analysis, all of which identified Ingram as a member of the conspiracy. During the investigation, the Drug Enforcement Agency ("DEA") obtained court-authorization to intercept wire and electronic communications, and the hundreds of intercepted calls and text messages included numerous conversations in which Ingram, his father, and others discussed their drug trafficking activities. The interceptions, surveillance, and geolocation data also

---

[1] The Court will not set out all of the facts in detail in this Order but incorporates by reference the facts as stated in the Order denying the motion to suppress, ECF No. 195, and the Government's response to the pending motion to withdraw the plea, ECF No. 284 at 1-5. *See also* ECF No. 218 (statement of facts supporting the guilty plea).

reflected that every two to four weeks, the Ingrams rented a vehicle in Crestview, Florida, traveled to Miami, Florida, and returned with kilogram quantities of cocaine, which they distributed in and around Walton County.

Ingram was present during the suppression hearing and represented by counsel, Mr. Britt and Mr. Gilbert. He thus heard and saw all of the evidence presented by the Government in response to the motion to suppress that was related to the drug investigation and the vehicle stop that resulted in Ingram's arrest. The motion was denied.

After the suppression hearing, the Court held an *ex parte/in camera* proceeding in response to a representation by Ingram and his father that they were not satisfied with their counsels' performance. During the hearing, Kadeem Ingram and his father both stated they had never seen the discovery in the case until that day. ECF No. 279 (sealed). However, Kadeem Ingram told the Court he was satisfied that he had now seen the discovery, as presented during the hearing and stated, "I'm going to keep the counsel I got."[2] *Id.* at 4. Mr. Gilbert stated that he had reviewed discovery with Kadeem Ingram, but it was quite voluminous and consisted largely of wiretap call transcripts that needed to be redacted due to a protective order in

---

[2] His father, Kenneth, also indicated after the hearing that he was satisfied with his attorney's representation.

place at the time.  The Court then required the Government to provide redacted copies and required arrangements to be made for Ingram to be transported from the Santa Rosa Count jail to the courthouse to review discovery and see the unredacted versions with counsel.[3]  Mr. Britt and Mr. Gilbert both affirmed that they would do so and that they were not withholding discovery from Ingram.  By separate order dated October 22, 2020, the Court instructed defense counsel to make arrangements to promptly review discovery with their client.

Ingram and his father both entered guilty pleas on November 13, 2020, before Magistrate Judge Charles Kahn, which the undersigned accepted on December 2, 2020.  During Kadeem Ingram's change of plea hearing, Mr. Britt was present and represented him.  When questioned about the quality of his representation, Ingram stated that he "communicated with [Mr. Britt] a lot," and that he had met with Mr. Gilbert at the federal courthouse the day before the change of plea hearing to review the discovery.  ECF No. 236 at 21-22, 25-26.  He stated he was satisfied with their representation.  *Id.* at 24.  When asked if there were any matters he had brought up with his lawyers that have not been answered, he answered "no."  He acknowledged that his attorneys had explained what the Government has to prove for conviction,

---

[3] This occurred prior to Ingram's change of plea hearing.

CASE NO. 3:19cr113-MCR

answering, "sort of, yes sir." *Id.* at 25. Ingram then stated twice, "I don't want to go to trial." *Id.* at 26. The Government called the magistrate judge's attention to the fact that during the suppression hearing, lengthy testimony and transcripts from numerous intercepted calls had been entered into evidence related to Ingram and his father's involvement in the drug trafficking conspiracy. Ingram then acknowledged he had read and signed the plea agreement, understood it, and that it was his decision to plead guilty. *Id.* at 28-29, 35-36. He further confirmed and agreed that the Government could prove its case if he went to trial and that he was in fact guilty. *Id.* at 37, 40.

On December 18, 2020, Ingram filed a *pro se* motion to dismiss his retained counsel, stating they had abandoned him during the detention hearing, the suppression hearing, the plea hearing, and the entire pre-trial proceedings. *See* ECF No. 227 (sealed). The Court directed counsel to respond and held an *ex parte/in camera* hearing on January 12, 2021. On January 13, 2021, the Court granted the motion to dismiss counsel and relieved retained counsel from further representation, continued the sentencing hearing, and appointed the Federal Public Defender under the Criminal Justice Act ("CJA").[4] The Court directed the Government to promptly

---

[4] The Court made no findings on the merits of Ingram's claims about counsel. ECF No. 248.

CASE NO. 3:19cr113-MCR

produce all discovery materials to new counsel upon counsel's appearance. CJA panel attorney Maria Dykes appeared on Ingram's behalf on January 22, 2021. The Government represents that an exact duplicate of all discovery previously produced was delivered to Ingram's new counsel, Ms. Dykes, on January 27, 2021.

On March 22, 2021, Ms. Dykes moved to withdraw, indicating Ingram had instructed her to file a "Rule 60(b)" motion on grounds that he had been abandoned by prior counsel and she did not feel she could file such a motion. Her motion withdraw as counsel was denied following a telephone conference between the undersigned, Ms. Dykes, and Ingram, in which the Court explained to Ingram that no lawyer can file a frivolous motion on his behalf and that his only option would be for Ms. Dykes to move to withdraw his guilty plea. Sentencing was rescheduled for July 16, 2021. One month before sentencing, on June 16, 2021, Ms. Dykes moved to continue on grounds that she would be filing a motion to withdraw the plea on behalf of Ingram. Sentencing was then rescheduled to September 17, 2021. Counsel did not file the pending motion to withdraw the plea until September 3, 2021, a mere ten days prior to the rescheduled sentencing hearing.

In the motion, Ingram seeks to withdraw his plea on grounds that his attorneys failed to review discovery with him before he entered the plea and failed to communicate with him, complaining that each attorney visited him only once, and

CASE NO. 3:19cr113-MCR

he only had two video visits with Mr. Britt. Ingram argues that the record shows he had serious misgivings about the discovery because he moved to dismiss his attorneys approximately a month following his guilty plea. He also argues that the lack of discovery review and lack of communication with his attorneys amounted to ineffective assistance and attorney abandonment.

**Discussion**

"[T]here is no absolute right to withdraw a guilty plea prior to imposition of a sentence;" however, the decision is left to the sound discretion of the district court. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988); *see also See United States v. Weaver*, 275 F.3d 1320, 1328 n. 8 (11th Cir. 2008). The district court is authorized to permit a defendant to withdraw his guilty plea prior to the imposition of sentence and final judgment if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine whether a "fair and just reason" exists to permit the withdrawal of a plea, the trial court considers the totality of the circumstances, including (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved or wasted; and (4) whether the Government would be prejudiced by permitted the withdrawal of the plea. *See Buckles*, 843 F. 2d at 472. If a defendant received "close and adequate assistance of counsel and

entered his plea knowingly and voluntarily," the remaining factors need not be given "considerable weight" or "particular attention." *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). Additionally, consideration is given to the timing of a motion to withdraw because "[a] swift change of heart is itself strong indication that the plea was entered in haste and confusion." *Id*. (internal quotation marks omitted).

On review of the totality of the circumstances, including the above-listed factors, the Court finds that Ingram has not demonstrated a "fair and just reason" to permit the withdrawal of his plea. First, despite his assertion otherwise, the record reflects that he received sufficiently "close and adequate" assistance of counsel. As described above, counsel did meet with Ingram before the suppression hearing, despite the complications that had arisen due to the pandemic; they filed the motion to suppress he wished to pursue; and they attended the hearing with him and ably prosecuted the motion. During the hearing, Ingram heard the evidence against him as presented by the Government. Thus, regardless of whether Ingram had physically seen the evidence against him in advance of that hearing, he undoubtedly saw it that day, as he acknowledged during the *ex parte* hearing held immediately after the suppression hearing. At that time, Ingram also indicated that he was satisfied with counsel and would not be firing them. The Court then arranged for counsel to meet

with Ingram at the courthouse to review the discovery in person, and Ingram admitted at the change of plea hearing that he had met with Mr. Gilbert the previous day for this purpose. Further, the change of plea hearing transcript reflects that Ingram understood the charges and his plea agreement and admitted he had communicated with counsel Mr. Britt "a lot." "There is a strong presumption that these statements are true." *United States v. Chicago*, 711 F. App'x 512, 515 (11th Cir. 2017) (citing *Gonzalez-Mercado*, 808 F.2d at 800 n.8). The Court finds that close assistance of counsel was available to Ingram.

Regarding the second factor, Ingram argues that his attorneys' failure to review all discovery with him in advance of his plea rendered his plea not entered knowingly. On this record, the Court disagrees. Where, as here, a defendant represented by counsel during the plea process, entered a plea on the advice of counsel, whether that plea was voluntary and knowing depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *see also Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985). To the extent Ingram is arguing that he received ineffective assistance of counsel, a showing of prejudice is necessary to prevail. *See Hill*, 474 U.S. at 58 (holding that prejudice under "the two-part *Strickland v.*

*Washington*[5] test applies to challenges to guilty pleas based on ineffective assistance of counsel"); *see also United States v. Rivers*, 656 F. App'x 444, 449 (11th Cir. 2016) (noting to withdraw a plea, the defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").  As acknowledged by the United States Supreme Court, "[t]here is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Discovery is authorized in a criminal case under Rule 16 of the Federal Rules of Criminal Procedure. *See Degen v. United States*, 517 U.S. 820, 825 (1996) (noting "[a] criminal defendant is entitled to rather limited discovery").  A defense attorney has an obligation under professional canons of professional responsibility "to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Holland v. Florida*, 560 U.S. 654, 652-53 (2010).  These professional obligations, however, do not mandate that counsel representing a criminal defendant must ensure the defendant sees every item of discovery material available, nor is the

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984) (articulating a two-part test for ineffective assistance claims, requiring (1) a showing that counsel's performance fell below an objective standard of reasonableness and (2) prejudice, such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

CASE NO. 3:19cr113-MCR

Court aware of such a constitutional requirement. *See United States v. Thompson,* Case No. 2:10cr200-DBH, 2013 WL 1809659, at **5-6 (D. Maine Apr. 29, 2013) (noting the court was "aware of no case holding that the Constitution requires that a defendant represented by a lawyer must personally see all the discovery that the government discloses to defense counsel or even the discovery that he asked to see"); *United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011) (noting the defendant cited "no authority for his argument that, to be ensured effective assistance of counsel, a defendant must be able to personally review all of the relevant discovery before trial" and that where the defendant is represented by counsel, his "personal review" of all discovery is "*not* constitutionally required or otherwise legally mandated").

Ingram stated during the change of plea proceeding that the discovery is "lengthy," and he did not get through it all. ECF No. 236 at 26. However, when asked whether he had any questions about that or about what the evidence against him would be at trial, Ingram answered he understood and stated unequivocally that he did not want to go to trial.[6] *Id.* And, as the undersigned observed during the

---

[6] His decision to plead guilty was consistent with other statements on the record. Ingram's father, Kenneth, stated during the *ex parte* hearing after the suppression hearing that "me and my son never wanted to go to trial, never prepared for trial. We always said we wanted a hearing for the stop, the search, detention, prolonged detention. After then, next step would be plea. But I hadn't even got a copy of my discovery, he ain't got a copy of his discovery." ECF No. 179 at 12

suppression hearing, the bulk of the Government's case against Ingram was revealed during that hearing so he cannot claim it was unavailable to him.

Moreover, and importantly, Ingram has shown no prejudice from his attorneys' alleged failure to review all discovery with him. Despite Ingram's general protest that he has misgivings about the discovery, he does not identify anything in particular that he has now seen which would have caused him *not* to enter a plea. He also contends vaguely that an investigator was not able to complete his work for the motion to suppress because of his attorneys' failure to communicate with the investigator, but again, Ingram does not reference any information unearthed that should have been presented on his behalf or that would have changed his decision to enter a plea. In sum, the plea transcript demonstrates that Ingram's plea was entered knowingly and voluntarily, and he has not demonstrated the prejudice necessary to prevail on an ineffective assistance of counsel claim. Therefore, the Court need not consider the additional factors concerning judicial resources or prejudice to the Government, as set out in *Buckles*, 843 F. 2d at 472. *See Gonzalez-Mercado*, 808 F.2d at 801.

---

(sealed). Thereafter, the Court arranged for them to review the discovery at the courthouse, and they both elected to plead guilty before the scheduled date of trial.

CASE NO. 3:19cr113-MCR

Ingram also contends that the record indicates a "swift change of heart" because he moved to dismiss his attorneys in December 2020, approximately one month after he entered his plea. This is insufficient to demonstrate a fair and just reason to withdraw his plea. The record clearly reflects that Ingram did not file a motion to withdraw his plea until September 3, 2021, nearly a year after entering his plea. He did request new counsel in December 2020, and the Court granted that request. Ingram's new attorney was appointed in January 2021 and received all discovery from the Government on January 27, 2021. She moved to withdraw in March, indicating an unwillingness to file a "Rule 60(b)" motion based on abandonment of counsel, as Ingram requested, and during the hearing on this motion, the undersigned expressly informed Ingram that no attorney could file a frivolous motion. The Court advised Ingram and Ms. Dykes that the only motion available at this point was a motion to withdraw his plea. The docket reflects that the change of plea hearing transcript was filed on January 6, 2021.[7] The Court finds that the motion to withdraw the plea, which was filed only 10 days before the scheduled September 17, 2021 sentencing hearing, does not reflect a swift change of heart.

---

[7] Ingram's attorney did not request the suppression hearing transcript until May 19, 2021. The transcript was filed on July 8, 2021. The transcript of the sealed *ex parte* proceeding after the suppression hearing was not requested until July 29, 2021, and was filed on August 13, 2021.

CASE NO. 3:19cr113-MCR

Finally, the Court finds Ingram's claim of attorney abandonment to be wholly without merit and that any lack of communication was due to an unforeseen pandemic and his decision to retain counsel from a great distance away. Despite these obstacles, counsel did communicate with Ingram and did appear and defend him by prosecuting his motion to suppress, reviewing discovery, advising him regarding his plea, and representing him during the plea hearing. Cases Ingram relies on regarding attorney abandonment are distinguishable and involve situations where counsel had not communicated with the client for years, *see Holland v. Florida*, 560 U.S. 654 (2010), or had left the firm and quit representing the client without notice, *see Maples v. Thomas*, 565 U.S. 266 (2012).

The Court also concludes that no hearing on this matter is necessary. The Court is entitled to rely on statements made by Ingram at his change of plea hearing, and the transcript reflects that extensive inquiries were made prior to the Court's acceptance of Ingram's plea. *See Chicago*, 711 F. App'x at 515 (finding no hearing necessary and that court was entitled to rely on statements of the defendant during his change of plea hearing); *Rivers*, 656 F. App'x at 447–48 (finding no abuse of discretion in denial of an evidentiary hearing on a motion to withdraw a plea where the court conducted extensive Rule 11 inquiries prior to accepting the plea). In addition to the extensive change of plea inquiries, the undersigned also examined

Ingram regarding his counsel's representation during other *ex parte* hearings as well and arranged for Ingram to meet and review discovery prior to entry of his plea. No further hearing is required.

The Court finds no fair and just reason for allowing Mr. Ingram to withdraw his plea. For the same reasons, the Court finds no reason to postpone the sentencing hearing.

Accordingly, the Motion to Withdraw Guilty Plea and Proceed to Trial by Jury, ECF No. 283, is **DENIED**. The pending motions to continue sentencing, ECF Nos. 286, 287, are also **DENIED**.

**DONE AND ORDERED** this 10th day of September 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**